Good morning, Your Honors, and may it please the Court. My name is Darren Zane. I represent Plaintiff Appellant Michael Fuqua. I'd like to reserve two minutes for a rebuttal. Appellee Lin, the prison chaplain, openly discriminated against Fuqua's religious beliefs. Lin denied Fuqua's request for a religious diet and disparaged Fuqua's religion. The District Court, however, held that Lin cannot be held liable under the Religious Land Use and Institutionalized Persons Act, or RLUPA. That is wrong. RLUPA allows a prisoner to obtain appropriate relief against the government. The Supreme Court in Tanzania-Tanzania interpreted those same words in the Religious Freedom Restoration Act and held RFRA clearly allows for individual capacity suits for money damages. But doesn't our prior decision in Wood suggest that the kind of remedy that is at issue or that was sought in RLUPA, which would have been the individual claim for damages, would not be constitutional if exercised under the spending clause? And so even though Tanzan now says that, you know, it exists in the RFRA context, the spending clause issue is still there. Judge Collins, no, Your Honor, because we read Wood as to hold, first of all, the language was not clear and it invoked the doctrine of constitutional avoidance. Wood first held that nothing in the language in RLUPA or the structure of RLUPA contemplated that Congress intended individual capacity suits for money damages. That is squarely in conflict with what the Supreme Court said in Tanzan. And Wood then talked about there might be constitutional doubts under the spending clause and used that as a way of interpreting those words. But Tanzan forecloses. I mean, Wood is a little bit ambiguous, but it's the following language on 903 that troubles me. It says, in reliance on Pennhurst, the Seventh Circuit in Nelson v. Miller held that legislation enacted pursuant to the spending clause cannot subject state offices to individual suits because the individual offices are not the recipients of any federal funds. And then it goes on. It says, you know, the Third and Tenth Circuits are now in accord. And then talks about the Fourth Circuit. And then Wood, while acknowledging the force of these holdings, contends they were undermined by Sabri, which you make a similar argument, and we reject that. That doesn't look like constitutional avoidance. It looks like a constitutional holding. Well, Your Honor, I would still urge the Court to read that as constitutional avoidance because Wood never grappled with the issue of an eminently clear spending clause statute, whether Congress could still impose that remedy. For example, Wood never grappled with other spending clause statutes, such as the Emergency Medical Treatment and Active Labor Act, EMTALA, which Congress passed under spending clause powers and imposed monetary fines on individual physicians who work for hospitals that receive federal funding. Nor did Wood grapple with Title X, which also imposes criminal fines and criminal penalties on individuals who work for state entities. So I think Wood has to be read in the light where it started off with the conclusion that the language is unclear, and then it proceeded to analyze that language looking at constitutional sources. But it's not allowed to do so when Tanzen tells us that actually appropriate relief in that context is eminently clear. The doctrine of constitutional avoidance cannot be used to interpret unambiguous words. There's no such thing as a spending clause canon of construction. As the Supreme Court has said in cases like Brunetti and Stevens, the canon of constitutional avoidance only applies when ambiguity in the text exists. Reinterpreting those words would be a serious invasion of the legislative domain. That's why we urge the Court to do it. I don't think there's any doubt that if Wood is constitutional avoidance, then it seems gone after Tanzer. But the question is, is Wood not a constitutional avoidance case? Well, Your Honor, I would still say that Congress has the authority to impose such a remedy. All the Supreme Court precedent on spending clause authority states that as long as an individual being held liable isn't the recipient of federal funds. If that's a constitutional holding and not a constitutional avoidance issue, that gets us in trouble with Tanzer. Then doesn't that foreclose what you're arguing? Well, Your Honor, if you read Wood to have held categorically Congress cannot impose such a remedy, then no, Tanzer doesn't address that issue. Tanzer addresses RFRA, which is not a spending clause statute. I would urge this Court to take that case en banc and to over that ruling. We don't read Wood as to say that, which is why we think that this panel has the authority to hold that Wood has been effectively abrogated by Tanzer. But in terms of can Congress categorically do this, I would cite to the other spending clause statutes that Congress has already enacted. It would essentially put those statutes in jeopardy if this Court reads Wood to have held categorically Congress cannot impose such a remedy. And more importantly, without a damages remedy, RLUIPA is largely unenforceable, as Tanzer has recognized. Money damages... Can I ask you, before your time runs out, about the equal protection claim? What's the proper... Does Turner provide the standard of analysis, in your view, that we should apply in evaluating the equal protection claim? I think the equal protection is a separate claim than the First Amendment. No, it is, but I want to know what you think about it. I think, based on the record, there's been plenty of evidence that allows this Court to also reverse the district courts holding on the equal protection claim. I think the district court failed to consider material evidence of Lynn's open animosity towards Wood. But what's the legal framework within which we analyze equal protection? Do we do it under a strict scrutiny standard, or do we do it under a Turner sort of prison interest standard? I don't have the exact case law in front of me, but I do believe it's... As long as Lynn's actions deprive the Fuqua of a reasonable opportunity to pursue his faith, comparable to the opportunity afforded to other fellow prisoners, that would establish an equal protection claim. And that is from Cruz v. Mebedo of the Supreme Court case on the equal protection claim. And just turning back to the RLUIPA, the authority issue, Your Honor, as Tanzan recognized, without a money damages remedy, RLUIPA is effectively unenforceable. As the amicus brief pointed out by the various religious organizations, prisoner officials are able to violate prisoners' RLUIPA rights with impunity if such a remedy is not available. In many cases, money damages against individual officials are the only remedy available, as shown by Mr. Fuqua himself, where his RLUIPA rights were violated by prison officials not And that is another reason why Congress clearly intended to do so, it did so appropriately under its spending clause powers, and Congress has done so in other statutes. I also want to point out that RLUIPA wouldn't even be the far edge of spending clause powers. In Sobre, the anti-bribery statute, 18 U.S.C. section 666 A.2, that provides the outer bound of Congress's spending clause powers. I want to save your time for rebuttal. Yes, Your Honor. I just want to point out in there that spending clause statute reaches third parties and not just employees of state entities. I will reserve the rest of my time for rebuttal. Okay. All right. We'll hear now from Ms. Baines. Good morning, Your Honors. May it please the Court. My name is Rebecca Baines on behalf of Defendant Lind. I'll begin today by addressing the RLUIPA issue, which was the primary focus of Fuqua's argument. And this Court has already correctly held that RLUIPA does not authorize monetary damages against individuals in personal capacity suits. And that was the result of the 2014 decision in Wood. It's also the law in every other circuit that's considered this issue, including after the Hansen decision. And Wood was, in fact, a constitutional discussion. It properly looked to what was the source of Congress's authority when it enacted RLUIPA. And because it was a spending clause statute, that did inform whether or not the money damages remedy was available to the plaintiff. Well, isn't counsel correct that we have criminal statutes that send people to jail for violating laws enacted under the spending clause? So is it your position we can send them to jail, but we can't make them pay money damages? That's the constitutional line under the spending clause? I don't think that that's the exact line of the spending clause statute. He cites Sabri, which is a criminal statute. And that argument, the same argument that Sabri can be read as always allowing for monetary that that's always an available remedy, Sabri doesn't go that far. This court rejected in Wood. It's been rejected in numerous other circuits that have considered the same arguing, including most recently in the Fifth Circuit's land order decision. But how does that make any sense to say that the spending clause, coupled with the necessary and proper clause, allows Congress to enforce the regime adopted under the spending clause with criminal penalties, but not civil damages? It seems difficult to defend that line. I think the reasoning can be understood when you look at what the different statutes are. And so Sabri, it was a criminal statute. It criminalized and made fines or penalties or possibly imprisonment an available remedy against both individuals who bribed an entity that received federal funds or individuals who accepted such bribes. And as the Fifth Circuit explained in its land order decision, which was the subject of our second Rule 28J letter, you know, there Congress is specifically targeting and trying to protect the assets of its federal funding, and it's regulating conduct directly related to those federal funds in the federal purse. When as you look at a statute such as RLUIPA that was enacted pursuant to Congress's cause, but it's not actually regulating any conduct related to federal funds or protecting sort of the use or preventing a recipient of a federal funding from, you know, from violating the statute that Congress offered to enact. So you're, as I hear you, you're saying it's not so much whether the method of criminal versus damages, it's really that the particular conduct at issue in Sabri was closer, had a closer nexus to federal funds than here. And so you would not necessarily foreclose that in the Sabri context, maybe it could do damages because you have that nexus. Does that make, do I have that correct? Yes. And I believe that's kind of the rationale that courts have employed in that case. And then secondly, also, and this goes to the cases that Fuqua has cited as other sort of spending clause statutes, that the second question in this is not just whether the individuals of them receive federal funding, but whether Congress has, if it chooses to make a remedy available for a LUPA statute, if it has unambiguously expressed the scope of what remedies those may be available. And Fuqua has not provided any sort of case law interpreting those statutes that he brings up, Title 10 and the EMTALA statute, interpreting whether or not that was a valid exercise of congressional authority. But that's somewhat beside the point, because those are also examples of Congress unambiguously making specific remedies available. And that just isn't the case with RUBA. The United States Supreme Court said so in its Sossaman decision where it was interpreting the same appropriate relief phase. And it held that, that that phrase does not unambiguously include monetary damages. So that's the analysis that the Supreme Court used there, that this court used in Wood, and that several other circuits have used that apply to this very question and issue. It's not Tanzan interpreting a different federal statute enacted pursuant to different federal powers. This court was correct in Wood, and this court should reaffirm that holding in this case. And. Well, what do you do about the language, you know, the language on 903 that I read to your opposing counsel, that seems to point in the direction of a constitutional holding. But then, as the court continues on page 904 of Wood and wraps up, it starts to talk about the lack of clarity in the language to suggest that Congress contemplated liability and then seems to suggest constitutional avoidance. So it, it seems to have elements of both. So it, the opinion itself is somewhat ambiguous. And. I, I think Wood was correct in its initial analysis where it, when it comes right out, it says because the individual officers don't receive federal funding, they can't be held as a spending clause statute. And then it sort of buttressed its opinion by sort of saying that, you know, it's not clear anyways, there's some ambiguity here, there's no question that Congress did not say that money damages may be available. So I, I think at its core, what is a constitutional decision? And then it also noted, hey, by the way, we would also have serious constitutional concerns if Congress also did that. But, but in any event, Congress didn't do that. The language remains the same, and it's not necessarily a matter of constitutional avoidance so much as it's properly looking to the source of Congress's authority and, and what the scope of remedies were available for it. And in cases, including the Cummings decision, do, do you say that what the consideration of what a remedy qualifies as appropriate relief must be informed by the way spending clause statutes operate? So I don't think that there should be any qualms about affirming relief as it stands in the constitution, and that, that individual damages, such as what Fuqua has sought here, are unavailable against individual officers. Can I ask you the same question I asked your opponent? What is the legal framework that governs our examination of the equal protection claim? Yes, so I, I don't believe that it's so much the Turner analysis such as that, that an equal protection claim requires either intentional discrimination, it's an intentional discrimination standard, and, and it requires a plaintiff to show that they have been treated differently than other similarly situated individuals without a rational relationship to, to a legitimate state purpose. That's what the case law that we've cited in this case, two ways to prove an equal protection claim, and plaintiff hasn't met either in this case. Well, I mean, some of the comments of the Chaplain Lind here would give rise to a triable issue of intentional discrimination, indeed, hostility to his religious view. I mean, the characterization of it as false is not, that, that's not a neutral ground. Even taking what Fuqua says, that Lind said, that the record still shows you that the reason that his requested accommodation was denied was not based on hostility or his disliking of the religion or his belief that it was untrue. It was because, according to prison policy, inmates... Well, Lind said that, that what didn't affect his, his gratuitous comment that he believed his religion was false. He said that that didn't affect his decision, but isn't that a triable issue, what motivated him? I, I don't think that it has to become a triable issue, and you still have the other record, or other evidence in the record showing that, that what was required of inmates to receive a requested accommodation, and then, and the fact that here what Fuqua provided and maintains that he provided two substantiated requests just didn't support what his requested accommodation was. So, I think that's the relevant evidence, and that, that the record just doesn't support a claim that it was denied based on hostility towards Fuqua or to his religion. I want to come back to the legal standard that applies to the equal protection case, or claim. I mean, what's the best authority, or what's the, the case that you would rely on for the standard that you're advancing? And I'll, I'll preface that with, as I read our decision in the Shacker or Shaker case, and I'll just quote from it, the district court applied the wrong standard of review, substituting mere rational basis review for the four-part balancing test in Turner. Under Turner, Shacker cannot, cannot succeed if the difference between the defendant's treatment of him and their treatment of Jewish inmates is reasonably related to the legitimate penological interest. I, I would still point to, to the case that we cited, community, concerning community improvement and inquest for the general legal standards, but, but even under that language in Shaker, there does still require evidence of discrimination and indifferent treatment between inmates of different religion, and then... Of course, but then you, when you stated the rule, you've got to have that showing, disparate treatment, that's what equal protection is all about. But then we still have the balancing against penological interest issues, correct? And that, those wouldn't come into the analysis if we were looking at strict scrutiny, at least not in the same way. Correct. So if you're looking at whether or not there's a potential treatment, there can be some different treatment as long as it is rationally related to a state interest. But I still don't even think here that we've actually gotten to that stage. Foucault failed to show that he was treated differently from other inmates. And I see that I'm out of time, but I'm happy to answer further questions or re-ask you a question. Okay. All right. Thank you, counsel. I will hear rebuttal from Mr. Zhang. Judge Collins, you mentioned civil damages versus criminal damages. EMTALA imposes up to $50,000 in civil penalties against individual physicians who work in hospitals that receive federal funding. So EMTALA shows that Congress does have spending clause authority to do so. What's your response to counsel's rejoinder to that point, that it's really not civil versus criminal, it's nexus to federal funds? Well, I think that's the anti-bribery statute. And that actually goes beyond what EMTALA, Title 10, and RELU, but the anti-bribery statute reaches third parties who bribe state officials, not even just officials who work for state entities that receive federal funding, state officials who are empowered at these entities and where, you know, entities are run by state officials. And so I think RELU is an easier question than the anti-bribery statute in SABRI. And perhaps you need a nexus to federal funding to reach independent third parties. But EMTALA and RELU are addressed as precisely just individual employees of state entities, making sure that those entities don't violate certain substantive rights of the federal statute. The other side also suggests that RELU is ambiguous. That is foreclosed by TANZAN. Again, SOSAMAN does not apply because that is a case of sovereign immunity, which requires heightened clarity. A spending clause only requires a normal lack of ambiguity, and TANZAN tells us that it is an ambiguous, those words. And finally, the other side mentions that the animosity statements towards Foucault's religion. The other side does not address or... We're handling the IT. Can we get rid of this feedback we have here? I'm sorry, Judge. I don't hear it on my end. We're hearing a fair amount of static, and it's interfering with counsel's presentation of his argument. Okay. I will look into it right now. Are you still hearing it, Judge? Yes. Okay. I'm on my way up to the courtroom. It seems to have stopped. I think you have about 20 seconds left, so you can proceed. I think we will hear you now. Thank you, Judge Collins. Only just briefly. The statements that Lynn made to Foucault, the other side does not even address, let alone dispute those openly attacking statements against Foucault's religion. Therefore, we submit that the court should reverse and remand the verdict. Okay. All right. Thank you, counsel. We will wait before we call the next case until we... Because the next case is the one with the video. And then after that, we'll have one more video.
judges: COLLINS, FORREST, SUNG